## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SHAQUEDA JOHNSON  and | : | |
| JANESSA HERRON | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | _____ |
| | : | |
| CLARK & SCHWENK | : | |
| RESTAURANT GROUP, INC. | : | |
| (d/b/a C & S OYSTER BAR, | : | |
| RICHARD HUGO CLARK, JR., | : | |
| and JONATHAN TODD | : | |
| SCHWENK | : | **Jury Trial Demanded** |
| | : | |
| Defendants. | : | |
| _____ | : | |

## <u>COMPLAINT</u>

Plaintiffs Shaqueda Johnson and Janessa Herron (collectively

"Plaintiffs") file their Complaint against Defendants Clark & Schwenk

Restaurant Group, Inc. (d/b/a C & S Oyster Bar) ("Defendant C & S"),

Richard Hugo Clark, and Jonathan Todd Schwenk (collectively

"Defendants"), and shows this Court as follows:

## NATURE OF THE ACTION

### 1.

This is an action for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); sex and race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; and 42 U.S.C. § 1981A ("Title VII"); and race discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## PARTIES

### 2.

Plaintiff Shaqueda Johnson  is a United States citizen who resides in Cobb County in the State of Georgia.  Plaintiff's consent to this action is attached as Exhibit 1.

### 3.

Plaintiff Janessa Herron is a United States citizen who resides in Cobb County in the State of Georgia. Plaintiff's consent to this action is attached as Exhibit 2.

### 4.

Defendant Clark & Schwenk Restaurant Group, Inc. (d/b/a C & S Oyster Bar) is a corporation organized under the laws of the State of Georgia with its principal corporate offices at 2799 Lawrenceville Hwy, Suite 202,

Decatur, Georgia, 30033. C & S can be served with  summons and complaint upon its Registered Agent, Errol Dwight Samuels, at the principal office address.

5.

Defendant Richard Hugo Clark, Jr. is an individual residing in Forsyth County in the State of Georgia. He can be served with summons and complaint at his personal residence at 3355 Olivia Ct., Cumming, Georgia, 30041.

6.

Defendant Jonathan Todd Schwenk is an individual residing in Fulton County in the State of Georgia. He can be served with summons and complaint at his personal residence at 315 Morning Dew Circle, Roswell, Georgia, 30075.

**JURISDICTION AND VENUE**

7.

The claims brought in this lawsuit present federal questions and jurisdiction in this Court is proper under 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. §§'s 1331, 1337, and 1343(a)(4); and 29 U.S.C. § 216(b).

8.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division under 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b).  The unlawful terminations and other discriminatory or unlawful acts against Plaintiffs occurred in this judicial district and division. In addition, all parties reside in this judicial district and division.

9.

Plaintiff Shaqueda Johnson filed a timely charge of discrimination alleging discrimination against female and African-American employee as a class against the Defendants at the Atlanta District Office of the Equal Employment Opportunity Commission ("EEOC") on September 25, 2023.  She received a notice of right to sue from the EEOC on or about March 8, 2024.

10.

Plaintiff Janessa Herron filed a charge of discrimination alleging discrimination against female and African-American employee as a class against the Defendants at the Atlanta District Office of the Equal Employment Opportunity Commission ("EEOC") on October 14, 2023.  She received a notice of right to sue from the EEOC on or about March 8, 2024. Ms. Herron's EEOC Charge specifically relied upon and cited to the class

wide gender and race discrimination allegations contained in Plaintiff Johnson's earlier filed EEOC Charge.

## FACTUAL ALLEGATIONS

11.

Plaintiff Shaqueda Johnson was hired as a server by Defendants at its Hugo's Oyster Bar location in 2014. She also worked at its previous Chowder House location from 2017 until she began working at its Vinings location in 2019.

12.

Plaintiff Janessa Herron was hired as a server by Defendants at its Vinings location at or around October 2022.

13.

The Vinings location is managed by a General Manager.

14.

However, as owners and officers, individual Defendants Clark and Schwenk are ultimately in charge and set policy for each of its locations. They can hire or fire any employee.

15.

Defendants also own and operate two other restaurants also doing business under the name C & S Oyster Bar in Sandy Springs and

Brookhaven, and another restaurant in Roswell doing business under the name Hugo's Oyster Bar.

**Factual Allegations specific to the FLSA claims in Count I.**

16.

At all locations, servers scheduled for Saturday work were required to attend a meeting with other employees every Saturday that occurs at 3:00 p.m., which is an hour before they are allowed to clock in to begin work as servers.

17.

Sometimes, if a test is going to be given, servers not scheduled for Saturday work are required to attend these meetings

18.

These tests usually have nothing to do with the duties of a server, but mostly cover miscellaneous trivia about the restaurant industry.

19.

The servers were not allowed to clock in for these meetings.

20.

Plaintiffs and servers are not paid the minimum wage for attending these Saturday meetings.

21.

For a long period of time, Plaintiff Johnson and servers were not even paid the tip credit wage for attending these Saturday meetings. At some point before Plaintiff Johnson was terminated, Defendants began paying the some servers the tip credit wage for attending these Saturday meetings.

22.

Even though she clocked in using a training wage button for these Saturday meetings, Plaintiff Herron was not paid any wage at all for attending these meetings.

23.

When she was first hired, Plaintiff Herron was provided a training wage button for her five days of training. But despite complaining to her managers, she was never paid for this time. Other servers told her that they were not paid for their training days either.

24.

Defendants did not pay Plaintiffs or any other servers the minimum wage for these Saturday meetings.

25.

Defendants did not pay Plaintiffs or any other servers any back wages for any past Saturday meetings they attended but were not paid at all.

26.

Under the Department of Labor regulations in effect during this time period (29 CFR § 531.56(e), Plaintiffs only engaged in a tipped occupation under 29 U.S.C. 203(t) when they performed work that produces tips during times the restaurant was open for customers, or performed work directly related to the tip-producing work that did not exceed a continuous period of time of thirty minutes.

27.

Despite these regulations, Plaintiffs and other servers would be required to perform work that was both related and non-related to their tip producing work for more than thirty minutes before the restaurant was open for customers.

28.

Plaintiffs and other servers were required to work for an hour before the restaurant was open for customers. They were only paid the tip-credit wage for this pre-shift work.

29.

Despite these regulations, Plaintiffs and other servers would be required to perform work that was both related and non-related to their tip producing work for more than thirty minutes at the end of their shift when

they were no longer serving customers or after the restaurant was closed for customers.

30.

At the end of each shift, either before the restaurant closed to customers, or afterwards, Plaintiffs and other servers were almost always required to work for over thirty minutes on server and non-server related work. They were only paid the tip-credit wage for this work.

31.

On some Saturday shifts, after completing more than thirty minutes of side work at the close of their shifts, Plaintiffs and other servers were required to totally break down the serving floor and move furniture so that Defendants could perform insect fumigation. They were only paid the tip-credit wage for this work.

32.

On some Sunday shifts following insect fumigation, Plaintiffs and other servers were required to come in early to set the furniture and serving floor area back up. They were only paid the tip-credit wage for this work.

33.

For these hours on the clock at the beginning and end of shift

performing non-server work, Defendants paid Plaintiffs less than minimum

wage, improperly taking advantage of the tip credit.

**Factual Allegations specific to the Title VII and Section 1981 claims in Counts II, III, and IV.**

34.

At or around January or early February, 2023, Plaintiff Herron heard

that General Manager, Arnold Sye (African-American) announced that Co-

owner and CEO Richard Clark (Caucasian) directed him not to hire any

"girls" as servers.

35.

Herron was warned by a managerial employee that Sye was going to

get rid of women servers based on Clark's discriminatory preference.

36.

Shortly after this, at or around February 2023, Sye gave Herron a

performance warning based on an online review when there was no

way to verify that she was actually the server for that customer.

37.

On April 16, 2023, fired Herron for what he alleged was another negative online review, which he also could not verify that she was the server for that customer.

38.

At or around late June/early July, 2023, Plaintiff Shaqueda Johnson learned that while getting drunk at the restaurant's bar, Sye announced that the restaurant would not hire any "girls" in the front of the house non-hostess positions.

39.

Co-owner and CEO Richard Clark (Caucasian) has repeated this discriminatory preference to other managers in at least one other of the Company's restaurants.

40.

At the direction of Clark, Sye wanted to get rid of women (particularly African-American women), in any front-of-the-house role but that of hostess.

41.

On August 29, 2023, the Company fired Shaqueda Johnson for what it considered one bad online review from a customer.

42.

Before this negative online review, Plaintiff Johnson had alerted Sye to customers having a negative experience due to delays in the kitchen on preparing the food orders for these customers.

43.

Sye addressed this with the customers, but apparently not to their satisfaction.

44.

Sye did not counsel Plaintiff Johnson that she was at fault for any part of the negative service this customer had.

45.

In accord with Sye and Clark's discriminatory comments, besides Plaintiffs, the Company also fired other African-American female servers (and one male) for allegedly receiving negative online reviews.

46.

And an African-American/Hispanic female bartender who knew she was about to be fired, resigned instead.

47.

The Company has not fired Caucasian males or females for one, or even two, negative online reviews, or for more significant performance issues or misconduct (including alcohol and drug abuse while working). The Company did suspend one white male for a negative online review.

48.

 Of the new hires for the Vinings location during this period, the Company  hired one woman for a hostess position, and may have hired one Caucasian female for a server position.

49.

The Company has a pattern or practice of discriminating against female (particularly African-American) employees at each of its restaurants (Vinings, Roswell, Sandy Springs, and Brookhaven).

50.

Defendants' unlawful terminations of Plaintiffs caused them financial hardship and emotional distress.

## COUNT ONE
## FAILURE TO PAY THE MINIMUM WAGE UNDER THE FLSA

### 51.

Defendants are employers engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA.

### 52.

Defendants have annual gross sales of at least $500,000 in their four restaurants.

### 53.

Defendants also handled goods that were moving in interstate commerce, such as the seafood they served.

### 54.

As owners and employees, Defendants Clark and Schwenk act directly or indirectly in the interest of the employer Defendant C & S.

### 55.

Because Defendants employed Plaintiffs and other servers, Plaintiffs and these other servers were employees within the meaning of the FLSA.

### 56.

Defendants violated the FLSA by failing to pay Plaintiffs and other servers the minimum wage for all hours worked for the Saturday meetings and training time.

14

57.

Defendants violated the FLSA by improperly taking the tip credit and not paying Plaintiffs and other servers at least the minimum wage for hours they worked performing duties that were not server duties.

58.

Defendants violated the FLSA by improperly taking the tip credit and not paying Plaintiffs and other servers at least the minimum wage for hours they worked performing server related duties beyond when they had already performed more than thirty minutes of continuous side work.

59.

Defendants know or should know that such actions violate the FLSA, and they have not made a good faith effort to comply with the FLSA.

60.

Defendants have all been sued for similar FLSA violations before.

61.

Defendants knowingly, willfully, and/or with reckless disregard, failed to pay Plaintiffs (and other employees) at least minimum wage for all hours worked.

62.

As a result of Defendants' illegal acts, Plaintiffs are entitled to recover the relief requested below.

## COUNT TWO
## SEX DISCRIMINATION UNDER TITLE VII
### (Defendant C & S only)

63.

Defendant C & S discriminated against Plaintiffs because of their sex when it terminated them for alleged negative online reviews.

64.

Defendant C & S did not terminate non-female servers or employees for receiving negative online reviews.

65.

In the months preceding their terminations, Defendant C & S owners and managers made statements that they were going to get rid of female employees as servers or front of the house positions besides hostess positions.

66.

Defendant C & S, in fact, did terminate female servers (particularly African-American servers) or other non-hostess front of the house employees in accord with this discriminatory preference.

67.

Defendants had a pattern or practice of terminating female and African-American servers and front of the house employees in non-hostess positions at all of its locations.

68.

In contrast to terminating Plaintiffs and other female and African-American servers for one or two negative online reviews, Defendants did not terminate or discipline employees (or owners) who engaged in serious illegal drug use while as work.

69.

Defendant C & S discriminated against Plaintiffs because of their sex by terminating them.

70.

As a result of Defendant C & S's discriminatory acts, Plaintiffs are entitled to recover the relief requested below.

**COUNT THREE**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**
**(Defendant C & S only)**

71.

Defendant C & S discriminated against Plaintiffs because of their race when it terminated them for alleged negative online reviews.

72.

Defendant C & S did not terminate non-African American servers or employees for receiving negative online reviews.

73.

Defendant C & S terminated African-American servers and other front of the house employees in accord with this discriminatory preference.

74.

Defendant C & S had a pattern or practice of terminating African-American servers and other front of the house employees at all of its locations.

75.

Defendant C & S discriminated against Plaintiffs because of their race by terminating them.

76.

As a result of Defendant C & S's discriminatory acts, Plaintiffs are entitled to recover the relief requested below.

## COUNT FOUR
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

77.

Defendants discriminated against Plaintiffs because of their race when it terminated them for alleged negative online reviews.

78.

Defendants did not terminate non-African American servers or employees for receiving negative online reviews.

79.

Defendants terminated African-American servers and other front of the house employees in accord with this discriminatory preference.

80.

Defendants had a pattern or practice of terminating African-American servers and other front of the house employees at all of its locations.

81.

Defendants discriminated against Plaintiffs because of their race by terminating them.

82.

As a result of Defendants' discriminatory acts, Plaintiffs are entitled to recover the relief requested below.

WHEREFORE, Plaintiff prays:

a.      That Summons issue requiring Defendants to answer the Complaint within the time provided by law;

b.      That Plaintiffs be awarded a declaratory judgment that Defendants violated the FLSA, Title VII, and Section 1981;

c.      That Plaintiffs recover from Defendants back pay and benefits with pre-judgment interest;

d.      That this Court order Defendants to reinstate Plaintiffs, or in lieu of reinstatement, award them front pay and benefits in an amount sufficient to compensate Plaintiffs;

e.      That Plaintiffs recover compensatory damages against Defendants in an amount to be determined by a jury;

f.      That Plaintiffs recover punitive damages against Defendants in an amount to be determined by a jury;

g.      That Plaintiffs recover back wages for time they worked for which they were either not paid, or were paid the incorrect tip-credit wage;

h.      That Plaintiffs recover liquidated damages under the FLSA;

i.      That Plaintiff recover attorney's fees and costs of litigation under the FLSA, Title VII, and Section 1981, and other applicable federal or state law;

j.      That the Court award Plaintiff any other or further relief as it deems

necessary and proper, or equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS**

**Local Rule 7.1.D Certification:**

By signature below, counsel certifies that the foregoing pleading was

prepared in Century Schoolbook, 13 point font in compliance with Local Rule

5.1B.

Respectfully submitted this 22nd day of March, 2024.

T. Robert Reid, LLC

<u>s/ Tilden Robert Reid, II</u>
T. Robert Reid
Georgia State Bar No. 600138
1030 Woodstock Road
Suite 3112
Roswell, Georgia  30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff